MOORE, Judge,
concurring in the result.
Y.N. (“the mother”) appeals from a judgment of the Jefferson Juvenile Court (“the juvenile court”) completely denying her right to visit with B.N. and W.N. Ill (“the children”). The mother asserts that the juvenile court erred because, she says, a complete suspension of a parent’s right to visit a dependent child violates the overall purpose of the Alabama Juvenile Justice Act (“the AJJA”), Ala.Code 1975, § 12-15-101 et seq.; a complete suspension of a parent’s right to visit a dependent child constitutes a de facto termination of that parent’s parental rights thereby triggering certain procedures that the juvenile court in this case did not observe; and the record does not disclose any threat to the children sufficient to warrant a complete denial of visitation. I agree with the main opinion that the juvenile court did not commit reversible error, but I do so for reasons different than those contained in the main opinion.
Alabama Code 1975, § 12 — 15—101(b)(3), provides that one of the overarching purposes of the AJJA is “[t]o reunite a child with his or her parent or parents as quickly and as safely as possible when the child *85 has been removed from the custody of his or her parent or parents.... ” In most cases, when a child is removed from the family home, a juvenile court shall make reasonable efforts to reunite the family. See Ala.Code 1975, § 12-15-312. Those efforts usually require that, during the reunification process, while a child remains dependent, the juvenile court provide some form of parental visitation. See Ala.Code 1975, § 12-15-102(23) (providing that parents of a dependent child retain residual right to visitation). The mother essentially argues that, in the foregoing context, it would violate the public policy behind the AJJA to totally preclude visitation between a parent and a dependent child because such an action would hinder the reunification process.
Whatever the merits of the mother’s argument, it simply does not apply to this case.[1] In its April 29, 2010, judgment, the juvenile court effectively awarded K.F. and S.F. “permanent” custody of the children. That judgment amounted to a finding that reunification with the parents, which the juvenile court had attempted since December 14, 2007, was no longer in the best interests of the children. Section 12 — 15— 101(b)(3) specifically provides that the goal of family reunification should be pursued “unless reunification is judicially determined not to be in the best interests of the child.” Hence, any provision in the judgment denying the mother future visitation with the children could not possibly interfere with the reunification process, which had ended, and could not possibly violate the public policy the mother cites.
Although the judgment did terminate the reunification process and although the judgment did end the dependency of the children, see S.P. v. E.T., 957 So.2d 1127, 1131 (Ala.Civ.App.2005) (holding that dependency ends when “the child has a proper custodian ‘and ’ is no longer ‘in need of care or supervision’ by persons other than the custodian”), the judgment did not terminate the parental rights of the mother. A termination of visitation rights is not a constructive or a defacto termination of all parental rights. See In the Interest of S.J.K., 149 Ill.App.3d 663, 673, 500 N.E.2d 1146, 1154, 103 Ill.Dec. 75, 83 (1986); State v. Garcia, 137 N.M. 583, 113 P.3d 406 (Ct.App.2005); State v. Ehli, 681 N.W.2d 808, 810-11 (N.D.2004); and In re Marriage of Kingsbury, 141 Or.App. 304, 917 P.2d 1055 (Ct.App.1996). But see D.H. v. State, 723 P.2d 1274, 1277 (Alaska 1986) (holding that placement decision that effectively negates noncustodial parent’s right to personal visitation constitutes de facto termination of parental rights). When a juvenile court enters a judgment terminating parental rights, that judgment terminates not only the right to visitation, but also the right to custody, control, and care of the children, as well as all other parental rights. Ex parte M.D.C., 39 So.3d 1117 (Ala.2009). Such a judgment is also permanent and irrevocable. See C.B. v. State Dep’t of Human Res., 782 So.2d 781, 785 (Ala.Civ.App.1998) (“termination of parental rights is an extreme action that cannot be undone; it is permanent”). On the other hand, a judgment denying visitation rights touches on only one aspect of the bundle of parental rights — the right to association with the child. See Kingsbury, supra. Also, a judgment denying a noncustodial parent visitation is not permanent and irrevocable because matters of visitation are never res judicata as to facts coming into existence after the entry of the judgment; rather, visitation judgments *86 may always be modified based on a subsequent material change of circumstances and upon proof that the modification would be in the best interests of the child. McKinney v. Alabama Dep’t of Pensions & Sec., 475 So.2d 568, 570 (Ala.Civ.App.1985); see also Ex parte Snider, 929 So.2d 447, 458 n. 9 (Ala.2005) (citing T.K.T. v. F.P.T., 716 So.2d 1235, 1239 (Ala.Civ.App.1998)). “There is a difference between permanently and irrevocably severing a parent-child relationship ... and entering a modifiable order preventing a parent from having contact with a child.... ” Hays v. Hays, 946 So.2d 867, 873 n. 7 (Ala.Civ.App.2006) (Murdock, J., concurring specially). Because the mother retains the right to petition the juvenile court for restoration of her visitation rights, and, for that matter, even for a return of the custody of the children, the mother has not been subjected to a termination of her parental rights. Hence, I agree that the mother was not entitled to the procedural safeguards associated with a termination of parental rights.
Nevertheless, a judgment totally suspending visitation between a noncustodial parent and a child will be “carefully scrutinize[d].” M.R.D. v. T.D., 989 So.2d 1111, 1114 (Ala.Civ.App.2008). Without visitation, a noncustodial parent would have no opportunity to maintain a meaningful relationship with his or her child. See Speakman v. Speakman, 627 So.2d 963, 965 (Ala.Civ.App.1993). Therefore, this court has directed that visitation with a noncustodial parent may be totally suspended only when the evidence leads the trial court to be reasonably certain that such a drastic action is essential to protect the child’s best interests. M.R.D., supra. By that standard, if the danger to the child from visitation can be ameliorated through some lesser restriction, that restriction should be used instead of a total denial of visitation. See Lee v. Lee, 49 So.3d 211, 214 (Ala.Civ.App.2010) (“a trial court may not ‘select[] an overly broad restriction that does more than address a particular concern and thereby unduly infringe[ ] upon the parent-child relationship’ ” (quoting Jackson v. Jackson, 999 So.2d 488, 494-95 (Ala.Civ.App.2007))).
A review of our caselaw reveals that visitation has been completely denied only in unusual and extreme cases. See Williams v. Williams, 474 So.2d 705, 707 (Ala.Civ.App.1984). Although a few cases may be found in which visitation has been denied for other reasons, see, e.g., Shires v. Shires, 494 So.2d 102 (Ala.Civ.App.1986) (affirming a judgment denying visitation to father whose 18-year-old child persistently refused visits), the vast majority of reported cases denying visitation have almost always been based on a finding that the parent is so unfit to properly care for the child that any visitation with the parent would jeopardize the health, safety, or welfare of the child. See, e.g., E.M.C. v. K.C.Y., 735 So.2d 1225, 1230 (Ala.Civ.App.1999) (trial court properly prohibited father from visiting with child “until the father obtain[s] professional counseling” based on evidence indicating that father physically assaulted child due to uncontrollable anger problem); J.T.H. v. W.R.H., 628 So.2d 894 (Ala.Civ.App.1993) (evidence of father’s history of drug, alcohol, and domestic abuse, and his mental instability supported juvenile court’s judgment denying all visitation with child); Baugh v. Baugh, 567 So.2d 1358 (Ala.Civ.App.1990) (trial court did not err in concluding that it was not in child’s best interests to visit father in prison where father was serving a 20-year sentence); Cole v. Cole, 507 So.2d 1333 (Ala.Civ.App.1987) (affirming a judgment suspending father’s visitation for 10 months based on evidence indicating that father alienated child from mother and taught child to lie, steal, deceive, and *87 be disrespectful to authority, damaging the child’s mental and emotional welfare); Minchew v. Mobile County Dep’t of Human Res., 504 So.2d 310 (Ala.Civ.App.1987); Murphy v. Murphy, 624 So.2d 620 (Ala.Civ.App.1993) (trial court properly denied father’s request to visit or correspond with son based on evidence indicating that son feared father, who was serving a 16-year prison sentence for raping his 16-year-old adopted daughter, and that son experienced emotional difficulties because of contact with father, and on clinical psychologist’s testimony indicating that any contact with father would undermine the son’s newfound sense of security, protection, and safety); Laurent v. Laurent, 434 So.2d 266 (Ala.Civ.App.1983) (affirming judgment suspending mother’s visitation for six months based on evidence indicating that mother could not control child and that child exhibited unruly, aggressive, and anxious behavior during mother’s visitation periods and on expert testimony indicating that continued visitation would likely cause child serious emotional problems); Soltis v. Soltis, 470 So.2d 1250 (Ala.Civ.App.1985) (evidence indicating that mother became addicted to ethyl alcohol, overdosed on four occasions, and committed violent acts with guns and knives in front of child supported judgment denying mother visitation); and Robbins v. Robbins, 460 So.2d 1355 (Ala.Civ.App.1984) (trial court was justified in suspending father’s visitation for 12 months and conditioning reinstatement on proof of father’s fitness based on evidence indicating that father had kidnapped child and removed child to another state and that, when father returned child to mother, the child was dirty, smelled bad, and had head sores). In those cases, the courts basically concluded that any interaction between the parent and the child would not be beneficial, but would, in fact, be harmful, to the child. See Robbins, 460 So.2d at 1356-57 (“The primary consideration in visitation rights is the best interest and welfare of the child.”).
In this case, the juvenile court initially awarded the parents supervised visitation. According to the findings of the juvenile court, which the mother does not dispute, the parents repeatedly failed to show for promised visits, causing both children emotional turmoil, even leading one child to suicidal ideation, which necessitated mental-health counseling. The juvenile court found that, upon suspension of the parents’ visitation, the children drastically improved to the point that counseling was no longer needed; however, one of the children resumed counseling after experiencing anxiety over the prospect that the mother again would be allowed contact. In its judgment, the juvenile court specified that it was denying visitation to avoid harming the children further.
The judgment fully comports with Alabama law regarding the denial of visitation. The factual findings show that the juvenile court was reasonably certain that a complete denial of visitation was essential to protect the children from further harm and that no lesser restriction would ameliorate the threat to the emotional well-being of the children caused by visitation with the mother.
B.M. v. Department of Children & Families, 981 So.2d 1229, 1232 (Fla.Dist.Ct.App.2008), the lone case cited by the mother, does not mandate a different result. In that case, a Florida District Court of Appeal held that visitation could not be denied altogether to a mother who had a substance-abuse problem when the danger to the child from the drug use could be ameliorated through supervised visitation. In B.M., the court further stated:
“Although the mother’s supervised visitation in this case was sporadic, even sporadic visitation is better for a child *88 than no visitation at all. There is no evidence here that the mother ever appeared for her supervised visitation while under the influence of drugs. There is no evidence that the interest of the child’s welfare would be better served by depriving the child of visitation with the mother.”
981 So.2d at 1232. In this case, however, the juvenile court did not deny visitation because of the dangers to the children arising from the mother’s continued drug abuse; rather, the juvenile court relied on the evidence indicating that the sporadic visitation between the mother and the children had emotionally harmed the children and that any further contact between the mother and the children would only further emotionally damage them. The factual dissimilarities between this case and B.M. render the reasoning in that case totally unpersuasive.
For the foregoing reasons, and those alone, I concur that the judgment of the juvenile court should be affirmed.

. I do not mean to imply that a juvenile court could never deny visitation to a parent during the reunification process. Given the circumstances of this case, I merely see no reason to address that issue.